DUPLICATE
ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
ACCELECARE WOUND CENTERS, INC.,           :
                                          :
                        Plaintiff,        :
                                          :
        -v-                               :
                                          :    08 Civ. 8351 (DLC)
THE BANK OF NEW YORK, AMICUS HYPERBARIC   :
GROUP, LLC, AMICUS MEDICAL GROUP, LLC,    :    OPINION & ORDER
AMICUS WEST TEXAS HYPERBARIC L.P.,        :
AMICUS TEXAS HYPERBARIC, LP, AMICUS       :
ARIZONA HYPERBARIS, L.P., AMICUS SOUTH    :
TEXAS HYPERBARIC, LP, AMICUS VALLEY       :
HYPERBARIC, LP, and JOHN R. HEDRICK,      :
                        Defendants.       :
                                          :
----------------------------------------X
                                          :
AMICUS HYPERBARIC GROUP, LLC,             :
                        Plaintiff,        :
                                          :    08 Civ. 11314 (DLC) ←——
        -v-                               :
                                          :
ACCELECARE WOUND CENTERS, INC.,           :
                        Defendant.        :
---------------------------------------- X

Appearances:

For Plaintiff Accelecare Wound Centers, Inc. and Counter-
Defendants Gwen Booth, Michael K. Lester, and Pamela Spaniac:

William S. Eggeling
Ropes & Gray, LLP
One International Place
Boston, MA 02110

Caitlin M. Moyna
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY 10036

For Defendants Amicus Hyperbaric Group, LLC, Amicus Medical
Group, LLC, Amicus West Texas Hyperbaric L.P., Amicus Texas
Hyperbaric, LP, Amicus Arizona Hyperbaris, L.P., Amicus South

Texas Hyperbaric, LP, Amicus Valley Hyperbaric, LP, and John R.
Hedrick:

Brian G. Jackson
9442 Capital of Texas Highway
Arboretum Plaza I, Suite 950
P.O. Box 1588
Austin, TX 78767

Thomas J. McGowan
Meltzer, Lippe, Goldstone & Breitstone, LLP
190 Willis Aveneu
Mineola, NY 11501


DENISE COTE, District Judge:

        This Opinion addresses a motion to dismiss in this breach

of contract action arising from a sale of health care

businesses.  Plaintiff Accelecare Wound Centers, Inc.

("Accelecare") is a Delaware corporation (with principal place

of business in Washington) that specializes in managing

hospital-based wound care centers, which often involve placing

patients in hyperbaric chambers offering increased oxygen

concentration to facilitate healing.  Accelecare acquired the

assets of defendants Amicus Hyperbaric Group, and six of its

affiliates' (collectively, "the Amicus Parties" or "Amicus")

assets used for the operation of wound care and hyperbaric

medicine management service centers pursuant to an Asset

Purchase Agreement dated May 31, 2007 (the "APA").

        In the APA, Accelecare and the Amicus Parties, citizens of

Texas and Arizona, agreed to place $2,841,400 of the purchase

price in an escrow account with the Bank of New York ("BONY"), a New York corporation, which was also named as a defendant when this lawsuit was originally filed.[1]  Accelecare, the Amicus Parties, and BONY signed an Escrow Agreement the same day.  The APA provided that certain conditions would entitle either Accelecare or the Amicus Parties to receive a portion of the funds from the escrow account, and this lawsuit concerns whether any of those conditions have in fact occurred.

Of central importance to this litigation is the "Earn-Out Provision," found in Section 14 of the APA.  The Earn-Out Provision provided that Accelecare would pay the Amicus Parties a bonus if certain medical centers met earnings targets.  The bonus would be calculated using a multiple of the EBITDA of certain medical treatment centers and it would be offset by certain adjustments, including a $1,750,000 cash advance on the bonus that Accelecare paid the Amicus Parties.  The APA allowed Accelecare to recoup from the escrow account any portion of the advance exceeding the actual bonus.  Accelecare could also offset any amount it owed to Amicus under the Earn-Out provision against any amounts that Amicus owed Accelecare under the APA (the "Offset Provision").  After the Amicus Parties delivered an audit opinion to Accelcare, $520,700 was disbursed to the Amicus

---

[1] In exchange for the Amicus Parties' assets, Accelecare agreed to pay $5,234,449 in cash, issue 248,528 shares of its stock, and assume some of the Amicus Parties' liabilities.

Parties from the escrow account, pursuant to the APA.  Beginning
in May 2008, Accelecare began to request disbursements from the
escrow account to pay tax obligations, as provided for in the
escrow agreement, but received no disbursements from BONY.  On
September 12, 2008, BONY gave Accelecare notice that it would
not make any further disbursements from the escrow account to
Accelecare.

Amicus Hyperbaric Group LLC filed an action against
Accelecare in the Northern District of Texas on August 18, 2008,
to establish its own rights to a percentage of the proceeds from
the escrow account related to the performance of certain assets
and in satisfaction of certain debts.  Amicus Hyperbaric Group,
LLC v. Accelecare Wound Centers, Inc., No. 08 Civ. 098-C (N.D.
Tex. filed Aug. 19, 2008) (the "Texas Action" or the "Related
Case").  Accelecare filed suit in this district on September 29,
2008, naming BONY and the Amicus Parties as defendants.
Accelecare's complaint alleges that BONY, acting on instructions
from defendant John Hedrick on behalf of the Amicus Parties,
refused to disburse funds from the escrow account as required by
the APA.  It also alleges that the Amicus Parties breached their
representations and warranties by misrepresenting their
financial situation, causing plaintiff to incur losses as a

result and that the Amicus Parties tortiously interfered with
the escrow agreement, causing BONY to breach that agreement.[2]

In an Order issued on December 22, 2008, the Honorable Sam
Cummings transferred the Texas Action to the Southern District
of New York, where it was assigned to this Court as related to
the instant case and renumbered 08 Civ. 11314 (DLC).[3] On December
28, the Amicus defendants filed a counterclaim for breach of
contract to the claim that Accelecare had filed on September 29.
The counterclaim also sought relief on behalf of "Counter-
Plaintiffs" Jim Bullard, Michael E. Austin, Carl Collazzo, and
David R. Vela, and included Hyperbaric Partners LP
("Hyperbaric") as one of the defendants, even though Accelecare
had not named Hyperbaric in the complaint.[4]  In addition to
Accelecare, the counterclaim names as "Counter-Defendants" its
employees Gwen Booth, Michael Lester, and Pamela Spaniac (the

---

[2] The parties have since voluntarily dismissed all claims against
BONY and moved the funds in the escrow account into the Court
Registry.

[3] The Escrow Agreement contains a forum selection clause
designating New York.  Amicus Hyperbaric Group LLC, No. 08 Civ.
098-C (order transferring case to the Southern District of New
York).

[4] The Amicus Parties and the Additional Counter-Plaintiffs will
be collectively referred to as the Counter-Plaintiffs.  The
counterclaim unfortunately fails to provide any explanation of
the Additional Counter-Plaintiffs' relationship to the Amicus
Parties, besides simply noting that some of them were present at
various meetings or apparently performing certain managerial
duties.  The APA indicated that Bullard was President of the
Amicus Parties, at least at the time that the APA was signed.

"Counter-Defendants"), who were not parties to either original lawsuit.[5]

On January 7, Accelecare moved to dismiss the Texas Action, now pending before this Court.  Its arguments are identical to those offered in support of its March 5 motion to dismiss the counterclaim.  The breach of contract claims at issue in this motion assert that the Counter-Defendants failed to pay three debts that they had assumed under the APA for $270,000, $25,000 and $275,000.  The Counter-Plaintiffs also allege that the Counter-Defendants breached the APA by failing to release $900,000 from escrow after the Medical Hospital Center Odessa (the "Odessa Center") met certain revenue targets.

Finally, the Counter-Plaintiffs assert that they would be entitled to greater payments had Counter-Defendants not mismanaged several of Accelecare's assets, causing other centers to fail to meet the revenue targets that would have triggered payments to the Counter-Plaintiffs, and they complain that

---

[5] Accelecare, Lester, Booth, and Spaniac will collectively be referred to as the "Counter-Defendants."  The counterclaim does not precisely identify the roles that Lester, Booth, and Spaniac played at Accelecare.  The Counter-Defendants' motions to dismiss reveal that Lester is Accelecare's CEO, Booth is the Senior Vice President of Operations of Accelecare, and Spaniac is currently President of Accelecare, although she was not affiliated with the company at the time that the APA was signed. The Amicus Parties do not dispute this information.

mismanagement also lowered the value of Accelecare stock.[6]
Against Booth, Lester, and Spaniac -- still under the "breach of
contract" heading -- the Counter-Plaintiffs specifically allege
that these three individuals intentionally and negligently drove
down Accelecare's stock price and deprived the Counter-
Plaintiffs of revenue they would have earned from the centers'
meeting certain revenue targets.  The Counter-Plaintiffs devote
several paragraphs to descriptions of the "incompetence and
mismanagement, both intentional and unintentional" that each of
these three individuals manifested.

        Accelecare argues that none of the additional parties added
in the counterclaim are proper parties, and that the remaining
allegations asserted by the Amicus Parties fail to state a claim
under Rule 12(b)(6), Fed. R. Civ. P.  Lester, Booth, and Spaniac
each moved to dismiss as well, incorporating Accelecare's
arguments and also seeking dismissal for insufficient service of
process, pursuant to Rule 12(b)(5), Fed R. Civ. P.   Finally,
Accelecare, Lester, Booth, and Spaniac have moved to strike the
allegations in the counterclaim regarding the parties' conduct

---

[6] Unlike the complaint in the Texas Action, the counterclaim
chronicles at length the allegedly deceptive negotiations and
poor management practices by Accelecare that flouted
regulations, squandered the company's value, and alienated its
employees, all ostensibly in support of the breach of contract
claim.

before and after the execution of the APA, pursuant to Rule
12(f), Fed. R. Civ. P.

DISCUSSION

After addressing whether the counterclaim states a claim
for breach of contract against any of the Counter-Defendants,
the Opinion will proceed to address the propriety of the
Additional Counter-Plaintiffs and Counter-Defendants'
participation in the lawsuit as pled in the counterclaim.  A
trial court considering a Rule 12(b)(6) motion must "accept as
true all factual statements alleged in the complaint and draw
all reasonable inferences in favor of the non-moving party."
Vietnam Ass'n for Victims of Agent Orange v. Dow Chemical Co.,
517 F.3d 104 (2d Cir. 2008) (citation omitted).  At the same
time, "conclusory allegations or legal conclusions masquerading
as factual conclusions will not suffice to defeat a motion to
dismiss."  Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d
328, 337 (2d Cir. 2006) (citation omitted).

Motions under Rule 12(b)(6) are evaluated according to a
"flexible plausibility standard, which obliges a pleader to
amplify a claim with some factual allegations in those contexts
where such amplification is needed to render the claim
plausible."  Boykin v. KeyCorp, 521 F.3d 202, 213 (2d Cir. 2008)
(citation omitted).  "To survive dismissal, the plaintiff must
provide the grounds upon which his claim rests through factual

allegations sufficient to raise a right to relief above the speculative level." ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted).

1. Breach of Contract

The parties agree that Delaware law governs the claims in this lawsuit, pursuant to a choice of law provision in APA § 16.1.  The elements of a breach of contract claim under Delaware law are: "1) a contractual obligation; 2) a breach of that obligation by the defendant; and 3) a resulting damage to the plaintiff." H-M Wexford LLC v. Encorp, Inc. 832 A.2d 129, 140 (Del. Ch. 2003).

The Amicus Parties' breach of contract claims, described above, fall into three categories.  First, they claim that Accelecare has not paid three debts it assumed in the APA. Second, they claim that Accelecare has not released from escrow $900,000 that the Amicus Parties are owed pursuant to the Earn-Out Provision because the Odessa Center met earnings targets. The final set of breach of contract allegations concerns mismanagement of the assets that Amicus conveyed to Accelecare.

A. Payment of Debts

Of the three debts that the Amicus Parties allege Accelecare assumed under the APA, Accelecare contests whether

Amicus states a claim based on two of the debts, $270,000 owed

to Gary Luker (the "Luker" claim) and $275,000 owed in

connection with an asset in McAllen, Texas (the "McAllen" claim)

because these obligations are duplicative.  Accelecare also

argues that the Amicus Parties cannot show any damage –- and

therefore, cannot state a claim for breach of contract --

because neither Luker nor Robert Morrow, to whom the third debt

at issue is owed, has demanded payment.  The Amicus Parties'

opposition does not contest that the McAllen and Luker claims

are duplicative and abandons the McAllen claim.

The only issue, then, is whether the Amicus Parties needed

to allege that Luker, Morrow, or creditors on their behalf have

made a claim for payment in order to show that the failure to

pay the debt has caused harm.  The allegation of harm, however,

is clear from the face of the counterclaim: that Accelecare

promised in the APA to pay a debt owed by the Amicus Parties and

failed to pay it.  Indebtedness is an obvious harm: interest is

accumulating and the obligation to pay remains outstanding.[7]  The

motion to dismiss the counterclaim for breach of contract on

failure to pay the McAllen claim is granted.  The motion

addressed to the Luker and Morrow claims is denied.

---

[7] It is notable that Accelecare does not argue that it has a
window of time to pay the debt remaining.  Amicus would
certainly have no breach of contract claim for a promise to
assume a debt not yet due.

B.  Failure to Release Earnings from Escrow

Accelecare argues that it was under no obligation to release funds pursuant to the Earn-Out Provision, specifically, the $900,000 to which Amicus claims it is entitled as a bonus on the performance of the Odessa Center, because the APA permits Accelecare to deduct any funds it was owed by the Amicus Parties from any funds it owed to them, and because Accelecare's rights to the escrow account are to be observed before Amicus receives disbursements.  As a consequence, Accelecare submits that payment of a $900,000 bonus authorized by the Earn-Out Provision for Odessa Center is not proper until Accelecare receives the funds from the Escrow Account that it is owed.

The Amicus Parties mistakenly base their entitlement on Section 3.2 of the APA, but this Section merely provides for the escrow account to be funded to support obligations that Accelecare may incur under the Earn-Out provision, Section 14 of the APA.  The only references to the Earn-Out provision in Section 3.2 describe the use of the escrow account for funding "obligations Seller may have to Buyer pursuant to Section 14(a)(i) related to the Medical Center Hospital at Odessa" or "amounts owed to Buyer pursuant to Section 14" (emphasis added). "Seller" is Amicus; "Buyer" is Accelecare.  Absent from Section 3.2, therefore, is any mention of disbursing funds to "Seller" -- that is, to the Amicus Parties -- pursuant to the Earn-Out

provision.  The Amicus Parties have failed to state a claim for
entitlement to the $900,000 based on this provision of the
contract.

The Amicus Parties have, however, stated a claim for
disbursement of $900,000 based on the Earn-Out Provision itself
which, unlike Section 3.2, does provide for disbursements based
on the EBITDA of the medical centers.  While the EBITDA alone
does not guarantee a particular bonus (the bonus is calculated
according to a formula that deducts various debts and the earn-
out advance), such a bonus payment may be earned.

The Offset Provision, contained in Section 14.1(a)(iii),
does not establish that, as a matter of law, the Amicus Parties
are not entitled to any bonus.  It simply gives Accelecare the
right to offset amounts owed to Amicus.  If there is a
determination that no amounts are owed to Accelecare by the
Amicus Parties, the opportunity to offset will be lost.
Accelecare's argument that it will be able to demonstrate a
right to an offset raises an issue of fact, which is beyond to
scope of this motion to dismiss.  Accelecare's separate point
that all of the contract provisions must be given effect in
making the determinations about payments that are due to
Accelecare or the Amicus Parties is, of course, correct.  Those
determinations must await, however, later stages of this
litigation.  The Amicus Parties have therefore stated a claim

for breach of contract for failure to pay $900,000 based on the
EBITDA of the Odessa Center.


C. Mismanagement

        Amicus does not claim that Accelecare's mismanagement
breached any specific provisions of the APA, aside from the
failure to pay enumerated debts and to pay a $900,000 Earn-Out
described above.  Amicus has not pleaded claims for any other
kind of breach.  It has therefore failed to state a claim for
breach of contract based on Accelecare's mismanagement.

        To the extent that it seeks to introduce such evidence to
show that there was some understanding regarding Accelecare's
obligations beyond those contained in the APA, such evidence is
barred because the Amicus Parties have not demonstrated that the
APA is any way ambiguous.  "If a contract is unambiguous,
extrinsic evidence may not be used to interpret the intent of
the parties, to vary the terms of the contract or to create an
ambiguity."  Eagle Industries, Inc. v. DeVilbiss Health Care,
Inc., 702 A.2d 1228, 1232 (Del. 1997).  Neither has Amicus
contested that the APA, which contains an integration clause, is
an integrated agreement.  "The parol evidence rule prevents the
consideration of oral evidence that would contradict either
total or partial integrated agreements."  Jana Master Fund, Ltd.
v. CNET Networks, Inc., 954 A.2d 335, 342 n.41 (Del. Ch. 2008)

(emphasis in original).  The allegations of mismanagement
therefore do not create additional obligations not found in the
APA.  Amicus seeks to link its mismanagement assertions to the
APA's terms by asserting that it would have earned more bonuses
but for the mismanagement.  Such as assertion, however, is not
sufficiently rooted in the APA's terms to state a claim.


2. Claims Against Booth, Lester, and Spaniac

        Accelecare, Booth, Lester, and Spaniac argue that the
Additional Counter-Plaintiffs and the Counter-Defendants are not
appropriate parties to the counterclaim, because, among other
reasons, none were parties to the APA, which existed between the
Amicus Parties and Accelecare.  They are correct.  Under
Delaware law, "only a party to a contract may be sued for breach
of that contract."  Wallace. v. Wood, 752 A.2d 1175, 1180 (Del.
Ch. 1999).  Similarly, non-signatories to a contract may not
bring suit to enforce the contract's terms.  Insituform of N.
Am., Inc. v. Chandler, 534 A.2d 257, 270 (Del. Ch. 1987).  The
counterclaim alleges breach of contract only.  It will therefore
be dismissed in its entirety as brought by Additional Counter-
Plaintiffs, including Hyperbaric Partners LP, and against Booth,
Lester, and Spaniac.

3. Motion to Strike

Accelecare has also moved to strike several portions of
counterclaim, mostly involving allegations of its mismanagement
of the company, pursuant to Rule 12(f), which allows a court to
"strike from a pleading an insufficient defense or any
redundant, immaterial, impertinent, or scandalous matter."
While the counterclaim contains stinging allegations of
mismanagement, it is not so extreme or salacious that it
warrants an exercise of the court's discretion under this rule.
Neither is the content, which describes the negotiation and
performance of the APA and the management of the combined entity
post-acquisition, so wholly unrelated to the subject matter of
the dispute that it should be stricken. "[T]he courts should not
tamper with the pleadings unless there is a strong reason for so
doing." Lipsky v. Commonwealth United Corp., 551 F.2d 887, 893
(2d Cir. 1976).  Given that many of the allegations in the
counterclaim are being dismissed on their merits, there is not a
sufficiently "strong reason" to support granting a motion to
strike as well.  The motion to strike is denied.


4. The Pending Motion to Dismiss in the Related Case (08 Civ.
   11314)

Accelecare makes the same arguments for the dismissal of
the Related Case pursuant to Rule 12(b)(6), Fed. R. Civ. P., and

15

the same analysis applies.  For the reasons outlined above, the
motion to dismiss the Related Case is granted except to the
extent that it seeks dismissal of the claim to a $900,000
disbursement from escrow and the payment of two debts.
Consolidation is appropriate when "actions involving a common
question of law or fact are pending before the court."  Fed. R.
Civ. P. 42(a)(2); Devlin v. Transportation Communications
Intern. Union, 175 F.3d 121, 130 (2d Cir. 1999).  The remaining
claims in the Related Case shall be consolidated with the
remainder of the counterclaim.


                              CONCLUSION

     The March 5, 2009 to dismiss filed in Accelecare Wound
Centers, Inc. v. The Bank of New York, Case No. 8 Civ. 8351, is
granted in part.  The counterclaim is dismissed in its entirety
against Booth, Lester, and Spaniac.  The counterclaim brought by
Bullard, Austin, Collazzo, Vela, and Hyperbaric Partners is also
dismissed in its entirety.  The Amicus Parties' counterclaim
against Accelecare is also dismissed except for its allegations
that Accelecare failed to disburse $900,000 based on the
earnings of the Odessa Center and owes repayment of the Luker

                                 16

and Morrow debts. The January 7, 2009 motion to dismiss filed in 08 Civ. 11314 is resolved on the same bases. A separate Order shall consolidate 08 Civ. 8351 and 08 Civ. 11314.

SO ORDERED:

Dated:     May 4, 2009
           New York, New York

DENISE COTE
United States District Judge

17